[No. 41325-2-I. Division One. May 24, 1999.]

THE STATE OF WASHINGTON, *Respondent*, v. RICHARD J.
AZPITARTE, *Appellant*.

*Christopher Gibson* of *Nielsen, Broman & Associates,
P.L.L.C.*, for appellant.

*Norm Maleng, Prosecuting Attorney*, and *Lisa N. O'Toole,
Deputy*, for respondent.

Cox, J. — In this appeal, Richard Azpitarte challenges for the first time the "to convict" instruction and the trial court's failure to give the jury a special verdict form. Both challenges are premised on his contention that second degree assault may not serve as the predicate for felony violation of a court order. We hold that second degree assault may serve as the predicate for the felony violation of such an order and affirm the judgment and sentence.

Azpitarte and D.L. began dating in late 1995. Their relationship soon deteriorated. In April 1996, the court entered a no-contact order against Azpitarte in favor of D.L.

Despite the order, D.L. and Azpitarte continued to see one another. On Christmas Day 1996, D.L. went to Azpitarte's home. She stayed there voluntarily until December 30, when she decided to go home. As she began to dress to leave, Azpitarte became angry and prevented her from putting on her clothes. He also smashed some of his household belongings with a hammer and a pipe and brandished the pipe over D.L.'s head.

While still naked, D.L. eventually was able to run from the house out into the snowy street. She jumped inside a UPS truck stopped in front of the house and asked the driver to call 911. Azpitarte followed D.L. He told her to get out of the truck, but she refused. Azpitarte then grabbed her by the arm and tried to pull her out of the vehicle. As Azpitarte and D.L. struggled, the driver left to find a phone to call the police.

Azpitarte went back inside his house but soon returned to the truck. He again tried to pull D.L. from the vehicle, this time by her hair. D.L. resisted, and Azpitarte pulled a handful of hair from the front of her head.

The State charged Azpitarte with one count of second degree assault, one count of domestic violence felony viola-

tion of a court order,[1] and one count of unlawful imprisonment. The jury was unable to reach a verdict on the count of unlawful imprisonment, but found Azpitarte guilty of second degree assault and domestic violence felony violation of a court order. Thereafter, the court entered judgment and sentence on the verdicts.

Azpitarte appeals.

## I. Special Verdict Form

 Azpitarte argues that the trial court's failure to submit a special verdict form to the jury was error. We hold that a special verdict form was not required.

Azpitarte contends that a special verdict form was required in this case to ensure that the jury did not convict him for felony violation of a court order on the basis of an improper predicate offense. He argues that second degree assault cannot be the predicate for felony violation of a court order. Azpitarte bases this argument on his reading of RCW 10.99.040(4), which provides in part as follows:

(a) Willful violation of a [no-contact order] is a gross misdemeanor *except as provided in (b) and (c) of this subsection (4)*. . . .

(b) Any assault that is a violation of an order issued under this section *and that does not amount to assault in the first or second degree* under RCW 9A.36.011 or 9A.36.021[2] is a class C felony . . . .

(c) A willful violation of a court order issued under this section is a class C felony if the offender has at least two previous

---

[1]This count (count II of the amended information) states, in part:

"That the defendant RICHARD J. AZPITARTE in King County, Washington on or about December 30, 1996, did knowingly violate the terms of a no contact order issued pursuant to RCW 10.99.040(2) or (3) of which the defendant had notice, forbidding the defendant's contact with [D.L.], by intentionally assaulting [D.L.];

"Contrary to RCW 10.99.040(4), and against the peace and dignity of the State of Washington."

[2]Assaults that do not "amount to assault in the first or second degree" are assault in the third degree (a class C felony under RCW 9A.36.031) and assault in the fourth degree (a gross misdemeanor under RCW 9A.36.041).

convictions for violating the provisions of a no-contact order issued under this chapter . . . .[3]

There were two assaults underlying the State's charges in this case. One was a second degree assault, based on Azpitarte pulling D.L.'s hair from her scalp.[4] The other assault was based on his pulling her arm. The arm-pulling appears to be assault in the fourth degree.[5]

Based on his reading of the above italicized portion of subsection (b) of the statute, Azpitarte contends that second degree assault may not serve as a predicate for felony violation of a court order. Because the jury convicted him of second degree assault in this case, he maintains that a special verdict form was required to ensure that the jury did not rely on that assault as the predicate for the charge of felony violation of a court order.

Although the State maintains that it made a proper election to rely on the fourth degree assault,[6] we read the record differently. In its closing argument to the jury, the State clearly invited the jury to rely on either assault, provided they were unanimous on which assault they chose:

> [PROSECUTOR:] Now, there are two assaults here I want to focus your attention on. There is another instruction that requires you to be unanimous, and to find beyond a reasonable doubt that at least one of those two assaults occurred for purposes of this crime.

---

[3](Emphasis added.)

[4]RCW 9A.36.021(1) states in part: "A person is guilty of assault in the second degree if he or she, under circumstances not amounting to assault in the first degree:

"(a) Intentionally assaults another and thereby recklessly inflicts substantial bodily harm."

[5]RCW 9A.36.041(1) states: "A person is guilty of assault in the fourth degree if, under circumstances not amounting to assault in the first, second, or third degree, or custodial assault, he or she assaults another."

[6]During pretrial motions, the State said, "The felony violation . . . is going to be based on the allegation that once she left the apartment . . . the Defendant came after the victim, grabbed her, and that's going to be the assault which would serve as . . . the basis of the felony violation count."

Let's start with the pulling of [D.L.'s] arm when she is in that truck. . . .

If you all agree that he [pulled her arm to get her out of the UPS truck] and you are unanimous and find that beyond a reasonable doubt, then that is sufficient. That is the one assault we need for the felony violation.

If you have a dispute about that, then turn to the hair pulling incident. If you believe that unanimously, then that is sufficient. The rule simply is, we can't have a verdict of guilty where five of you believe he pulled her hair but aren't sure about the arm pulling, and the rest of you believe he pulled her arm but aren't sure about the hair pulling, you know what I am saying. You have to all agree on the same act.

Thus, the State invited the jury to consider the second degree assault if it could not unanimously agree on the fourth degree assault. Therefore, the narrow legal question that we must address is whether the jury could properly rely on second degree assault as the predicate offense for the felony violation of a court order. If so, a special verdict form was not required.

█ Azpitarte did not object below to the trial court's failure to submit a special verdict form to the jury. But instructional errors of constitutional magnitude may be raised for the first time on appeal.[7] We will address the merits of constitutional errors if the appellant establishes a right to relief under the test set out in *State v. Lynn*.[8]

We conclude that the first two *Lynn* factors are met. First, the alleged error raises a constitutional issue. Due process requires that the State establish every element of the crime charged beyond a reasonable doubt.[9] If second degree assault is not a proper element of the crime charged here, then the conviction must be set aside.[10]

---

[7] RAP 2.5 (a)(3); *State v. Scott*, 110 Wn.2d 682, 686-87, 757 P.2d 492 (1988).

[8] 67 Wn. App. 339, 345, 835 P.2d 251 (1992).

[9] *In re Winship*, 397 U.S. 358, 364, 90 S. Ct. 1068, 25 L. Ed. 2d 368 (1970).

[10] *Winship*, 397 U.S. at 364.

Second, the alleged error is manifest. Azpitarte claims that under RCW 10.99.040, a domestic violence felony violation of a court order cannot be based on either a first or second degree assault. If that were true, it would be necessary to determine which assault in this case was the predicate for the felony violation of the no-contact order charge. Therefore, the lack of a special verdict form would have practical and identifiable consequences at trial.

Because we conclude that the alleged constitutional error is manifest, we proceed to the merits of the issue.

■ We review a trial court's decision regarding a special verdict form under the same standard of review as we apply to decisions regarding jury instructions.[11] Thus, we review a trial court's refusal to submit a special verdict form to the jury, when that refusal is based on the facts of that case, for abuse of discretion.[12] And if the trial court's refusal is based on rulings of law, we review that decision de novo.[13] Here, had Azpitarte requested a special verdict form, the refusal to give such a form would have been based on a ruling of law, not fact. Thus, we will review the absence of a special verdict form de novo.

■■ We turn now to interpret RCW 10.99.040(4). When a statute is plain on its face, construction is not required.[14] But where we must construe a statute, we do so in the manner that best fulfills its legislative purpose and intent.[15] Legislative intent is primarily determined from the statutory language.[16] If that language is susceptible to two mean-

---

[11]*Capers v. Bon Marche*, 91 Wn. App. 138, 955 P.2d 822 (1998), *review denied*, 137 Wn.2d 1002 (1999).

[12]*State v. Lucky*, 128 Wn.2d 727, 731, 912 P.2d 483 (1996), *overruled on other grounds by State v. Berlin*, 133 Wn.2d 541, 947 P.2d 700 (1997).

[13]*Lucky*, 128 Wn.2d at 731.

[14]*Erection Co. v. Department of Labor & Indus.*, 121 Wn.2d 513, 852 P.2d 288 (1993).

[15]*In re Marriage of Kovacs*, 121 Wn.2d 795, 804, 854 P.2d 629 (1993).

[16]*Duke v. Boyd*, 133 Wn.2d 80, 87, 942 P.2d 351 (1997).

ings, we apply the construction that best carries out the express legislative intent.[17] And we avoid constructions that cause unlikely, strange, or absurd results,[18] or that render portions of the statute inoperative or superfluous.[19]

RCW 10.99.040(4)(a) states that a willful violation of a no-contact order is a gross misdemeanor "except as provided in (b) and (c)" of the subsection.[20] We must therefore look to those two subsections to determine under what circumstances the violation of a no-contact order by means of assault elevates that violation from a gross misdemeanor to a felony.

Looking first at subsection (b), we conclude that the following language elevates the willful violation of a no-contact order by means of third or fourth degree assault from a gross misdemeanor to a felony: "Any assault that is a violation of [a no-contact order] and that does not amount to assault in the first or second degree . . . is a class C felony . . . ." Azpitarte urges us to construe this language to also mean that second degree assault must be excluded from those assaults that enhance a violation of a no-contact order from a gross misdemeanor to a felony. We reject that construction.

---

[17]*City of Seattle v. Fontanilla*, 128 Wn.2d 492, 498, 909 P.2d 1294 (1996).

[18]*State v. Contreras*, 124 Wn.2d 741, 747, 880 P.2d 1000 (1994).

[19]*Cox v. Helenius*, 103 Wn.2d 383, 693 P.2d 683 (1985).

[20]RCW 10.99.040(4) provides in part as follows:

"(a) Willful violation of a court order issued under subsection (2) or (3) of this section is a gross misdemeanor except as provided in (b) and (c) of this subsection (4). . . .

"(b) Any assault that is a violation of an order issued under this section and that does not amount to assault in the first or second degree under RCW 9A.36.011 or 9A.36.021 is a class C felony punishable under chapter 9A.20 RCW, and any conduct in violation of a protective order issued under this section that is reckless and creates a substantial risk of death or serious physical injury to another person is a class C felony punishable under chapter 9A.20 RCW.

"(c) A willful violation of a court order issued under this section is a class C felony if the offender has at least two previous convictions for violating the provisions of a no-contact order issued under this chapter, a domestic violence protection order issued under chapter 26.09, 26.10, 26.26, or 26.50 RCW, or any federal or out-of-state order that is comparable to a no-contact order or protection order issued under Washington law. . . ."

Such a reading would violate a cardinal rule of construction, avoiding absurd results. The facts of this case illustrate well the potential absurdity. Under Azpitarte's reading, he could violate the prior no-contact order by tearing out D.L.'s hair, or worse, and yet face only a gross misdemeanor charge for that violation of the order. In contrast, he could pull D.L. out of the UPS truck by her arm and face a class C felony violation. That reading of the statute makes no sense.

The absurdity of the construction is further illustrated when we read subsections (b) and (c) together. The latter provision reads:

> (c) A willful violation of a court order issued under this section is a class C felony if the offender has at least two previous convictions for violating the provisions of a no-contact order issued under this chapter . . . .

Adopting Azpitarte's construction of subsection (b) would mean that in this case he would face only a gross misdemeanor charge for tearing out D.L.'s hair. Yet if he had twice before been convicted of pulling D.L.'s arm, and this case was his third arm-pulling incident, Azpitarte would face a class C felony punishment. This result also makes no sense.

Azpitarte's proposed reading also violates another rule of construction, that we give effect to the statute's strong statement of legislative intent. Here, the legislative intent indicates that domestic violence is a serious crime and that official response to that crime must protect victims:

> *The purpose of this chapter is to recognize the importance of domestic violence as a serious crime against society and to assure the victim of domestic violence the maximum protection from abuse which the law and those who enforce the law can provide. . . .* It is the intent of the legislature that the official response to cases of domestic violence shall stress the enforcement of the laws to protect the victim and shall communicate

the attitude that violent behavior is not excused or tolerated.[21]

While the provision that Azpitarte challenges might have been written more clearly, we cannot ignore the clear legislative statement of policy that domestic violence is to be treated as a serious offense. Courts have acknowledged this policy when considering cases involving alleged violations of no-contact orders.[22] To adopt a construction of the statute that runs counter to that policy would be improper. The Legislature has indicated that a violation of a no-contact order by means of "any assault" is a felony.[23] Therefore, we construe subsection (b) in a manner that is most consistent with both that statement and the legislative policy.

Whether the jury relied on the arm pulling or the hair pulling is irrelevant under our construction of the statute. Either could serve to elevate the violation of the no-contact order to a felony, provided the jury was unanimous as to the assault on which they relied to convict. A special verdict form was not necessary.

## II. Jury Instruction

Azpitarte next challenges for the first time the "to convict" instruction. He argues that the instruction failed to properly instruct the jury that a second degree assault cannot be the predicate for felony violation of a court order. We disagree.

The "to convict" instruction stated in part:

> To convict the defendant of the crime of Domestic Violence Felony Violation of a Court Order, as charged in Count II, each of the following elements of the crime must be proved beyond a reasonable doubt:

---

[21]RCW 10.99.010 (emphasis added).

[22]*State v. Anaya*, 95 Wn. App. 751, 976 P.2d 1251 (1999); *Jacques v. Sharp*, 83 Wn. App. 532, 537-38, 922 P.2d 145 (1996).

[23]RCW 10.99.040(4)(b) and (d).

(1) That on or about 30th day of December, 1996, the defendant did intentionally assault [D.L.] . . . .

Because second degree assault may serve to enhance the violation of a no-contact order to a felony, the court properly instructed the jury that it must find beyond a reasonable doubt that Azpitarte "did intentionally assault" D.L. to convict him of this offense. The "to convict" instruction in a prosecution for felony violation of a court order need not exclude second degree assault from those assaults that may be predicates for the offense.

We affirm the judgment and sentence.

The remainder of this opinion has no precedential value and will not be published.[24]

BAKER and APPELWICK, JJ., concur.

Reconsideration denied July 26, 1999.